COMMONWEALTH *vs*. SAMUEL H. WOOD.
SAME *vs*. SAME.
SAME *vs*. SAME.

Worcester.   October 4. — 21, 1886.   DEVENS & W. ALLEN, JJ., absent.

An indictment for obtaining money by false pretences alleged that the defendant, at a time and place named, falsely represented to A. that the defendant was treasurer and secretary of a corporation established in another State; that the capital stock of the corporation was $400,000; that $200,000 worth of said stock had been subscribed for and paid in in cash, which was chiefly invested in real estate where the corporation was located; that the stock was worth, and was selling for, a certain sum per share, at said place; and that the defendant, on a later day named, by a letter written by him and received by A. on said day, falsely represented that the amount of capital stock subscribed for, paid in, and invested as aforesaid was $192,000, instead of $200,000, as previously stated by the defendant. At the trial, the government introduced evidence tending to prove the oral statements alleged to have been made by the defendant; and, to prove the modification of these statements alleged to have been made subsequently by letter, introduced a letter written by the defendant to A., the material part of which was as follows: "The issue of additional stock in the" corporation "will not be made till" a day named, "as we want to dispose of about $8000 more stock; we have sold $192,000 and want to make it $200,000, then one half of the capital stock will have been issued. About two thirds of this stock has been taken by old stockholders at par, but part of the stock has sold as high as" a certain sum "per share. The new stock does not receive any dividend until" a day named. The judge refused to rule, as requested by the defendant, that there was no evidence to prove the representation as alleged in the indictment, or that there was a variance between the allegation and the proof as to the letter; and instructed the jury, that, if they should find that the statement in the letter was a correction of the oral statement previously made as to the amount of stock issued, then stated to be $200,000, they would be authorized to convict the defendant, and that the meaning of the letter was for them, but, if it related to a new issue of stock, they must acquit. *Held*, that the defendant had no ground of exception.

Under an indictment for obtaining money by false pretences, a conviction may be had for falsely representing that the stock of a corporation was selling at a certain price, but not for falsely representing that it was worth a certain price.

An indictment alleging that, by reason of false representations made by the defendant to A., as to the stock of a corporation, A. was induced to deliver to the defendant, at a certain town in this Commonwealth, a cashier's draft for the payment of a sum named, is supported by proof that A. sent the draft to the defendant in another State, being directed so to do by a note written by the defendant and left at A.'s place of business in this Commonwealth, whether A. sent the draft from this Commonwealth by the hand of an agent of the defendant, or deposited it in the mail.

An indictment alleged that A., induced by certain false pretences made by the defendant, (which were set forth,) delivered to the defendant a certain sum of

money, in exchange and in payment for a certain number of shares of stock. A bill of exceptions, alleged by the defendant and allowed by the presiding judge, which purported to set out all the evidence material to the questions raised, stated that there was evidence tending to show that A. was induced to send a check, "a copy of which is inserted in said indictment," to the defendant. No copy of a check was inserted in the indictment. *Held*, that a ruling, requested by the defendant, that the evidence would not warrant a conviction, should have been given.

MORTON, C. J. Three cases against the defendant for obtaining money by false pretences were tried together in the Superior Court, and come before us on a single bill of exceptions. It will be convenient to consider the cases separately.

In the first case, the indictment charges that the defendant, at Berlin, in the county of Worcester, on February 5, 1884, falsely represented to John G. Peters that he, said Wood, was treasurer and secretary of the Western Real Estate and Improvement Company, a corporation established at Minneapolis, in the State of Minnesota; that the capital stock of said company was $500,000; that $200,000 worth of said stock had been subscribed for and paid in in cash, which was chiefly invested in real estate in Minneapolis; that the stock was worth, and was selling for, from $55 to $60 per share, at said Minneapolis; and that the defendant, on April 25 following, by a letter written by him and received by said Peters, at Berlin, on said April 25, falsely represented that the amount of capital stock subscribed for, paid in, and invested as aforesaid, was $192,000, instead of $200,000, as previously stated by the defendant.

The government introduced evidence tending to prove the oral statements alleged to have been made at Berlin; and, to prove the modification of these statements alleged to have been made by the letter received on April 25, introduced a letter of the defendant, which we infer was dated April 20, 1884, the material parts of which are as follows: " The issue of additional stock in the W. R. & Imp. Co. will not be made till May 1st, as we want to dispose of about $8000 more stock; we have sold $192,000 and want to make it $200,000, then one half of the capital stock will have been issued. About two thirds of this stock has been taken by old stockholders at par, but part of the stock has sold as high as $52 per share. The new stock does not receive any dividend until January 1st next." This letter,

construed in connection with the previous oral statements of the defendant, substantially states that $192,000 of the capital stock had been paid in. It would naturally be understood as intended to state that the amount of capital stock paid in was $192,000, and directly tended to support the allegations of the indictment. The court, therefore, properly refused to rule, as requested by the defendant, that there was no evidence to prove the representation as alleged in the indictment; or that there was a variance between the allegation and the proof as to this letter. The instruction given by the court upon this subject was sufficiently favorable to the defendant.*

The defendant also asked the court to rule, " that the representation that the stock was worth and selling for from $55 to $60 per share, was not such a representation as the defendant could be convicted for making." The court rightly ruled, " that the defendant could not be convicted for making the representation that the stock was worth from $55 to $60 per share, but could for the representation that it was selling from $55 to $60 per share." The last-named representation is not a statement of opinion as to the value of the stock. It is a statement of a material fact, of which Peters had no knowledge or means of knowledge, and upon which he had the right to rely. *Manning* v. *Albee,* 11 Allen, 520.

In the second case, the indictment charges that the same representations alleged in the first case, except that made by the letter received on April 25, 1884, were made to John G. Peters, at Berlin, on February 5, 1884; and that said Peters was thereby induced to, and did, on February 15, 1884, deliver to the defendant, at said Berlin, a cashier's draft or order for the payment of $4612.50.

The ruling that the defendant might be convicted for making the false representation that the stock was selling for from $55 to $60 was right, for the reasons we have stated above.

---

* The judge instructed the jury, that, if they should find that the statement in the letter of April was a correction of the statement made in February in the matter of the amount of stock issued, then stated to be $200,000, they would be authorized to convict the defendant, and that the meaning of the letter was for them; but, if it related to a new issue of stock, they must acquit.

The defendant asked the court to rule that, upon the evidence, "the offence was not complete in this Commonwealth, and, even if complete, the defendant could not be convicted in this county;" which ruling the court refused. It appears by the bill of exceptions that "the government introduced evidence tending to prove the representations alleged at Berlin, and that they were false, and known to be so by the defendant, and also that the purpose of the defendant in making them was as alleged in the indictment; and that, in consequence thereof, Peters was induced to send a cashier's draft for the amount named, of which a copy is inserted in the indictment, to the defendant at New York, being directed so to do by a note written by the defendant, and left at Peters's place of business in Boston."

Although the defendant received the money on the cashier's draft in New York or in Minneapolis, it cannot be doubted that the offence charged in the indictment was accomplished and completed at Berlin when Peters, at the request of the defendant, sent him the draft, whether he sent it by the hand of an agent of the defendant, or deposited it in the mail. The exceptions do not show how he sent it. But, if he sent it by a carrier or other agent of the defendant, the delivery to the agent was a delivery to the defendant. *Commonwealth* v. *Taylor*, 105 Mass. 172.

So, if he sent it by mail, when he deposited it in the post-office, it passed out of his control into the control of the defendant, and the postmaster was the agent of the defendant to forward the letter to him. *Regina* v. *Jones*, 4 Cox C. C. 198.

We are not called upon to consider whether, if the letter had been mailed in Boston, it would change the venue to Suffolk county. No such question is raised by the bill of exceptions, as there is nothing to indicate that it was mailed in Boston.

In the last case, the indictment charges the defendant with obtaining money of Luther Peters by means of false representations, the same as those alleged in the first case. The bill of exceptions purports to set out all the evidence material to the questions raised. The indictment alleges that said Luther, induced by said false pretences, on July 25, at Berlin, delivered to the defendant the sum of $566.50, in exchange for, and in payment of, eleven shares of stock sold him by the defendant.

The bill of exceptions sets out that there was evidence tending to show " that Luther was induced to send a check, a copy of which is inserted in said indictment, to the defendant at Minneapolis." We do not know what this means, as there is no copy of a check inserted in the indictment. Taking the exceptions as they stand, we think that the ruling requested, that the evidence would not warrant a conviction, should have been given.

It is quite probable that an error in the bill of exceptions was caused by the attempt to embrace three cases in one bill, but we must take the bill of exceptions as allowed by the presiding justice ; and, as there does not appear to have been any evidence to support the allegation that Luther paid the defendant the sum alleged, the exceptions must be -sustained.

The result is, that, in the last case, the exceptions are sustained; and, in the others, the exceptions are *Overruled.*

Defendant, *pro se.*

*E. J. Sherman,* Attorney General, for the Commonwealth.